IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 8, 2018 Session

## TAYLOR SHERRER EX REL LILLY S. ET AL. v. JOHN B. CLEGHORN ET AL.

**Appeal from the Circuit Court for Lincoln County**
**No. 2015-CV-102   Franklin L. Russell, Judge**

_____

**No. M2018-00023-COA-R3-CV**

_____

This is a wrongful death case.  Decedent was operating his motor vehicle in the early morning when he struck a bull in the middle of the road.  As a result of the collision, Decedent's vehicle careened off the road and flipped upside down into a nearby creek, where Decedent drowned.  Plaintiffs, Decedent's surviving spouse and children, sued Defendant, alleging that he was negligent in his ownership and control of the bull.  Defendant denied ownership, possession, or control of the bull and moved for summary judgment, which the trial court granted.  On appeal, Plaintiffs argue that the trial court erred at the summary judgment stage by weighing the evidence and making determinations as to the credibility of witnesses.  We agree and reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Ben Boston, Charles W. Holt, Jr., Ryan P. Durham and Cameron Hoffmeyer, Lawrenceburg, Tennessee, for the appellant, Taylor Sherrer.

John H. Richardson, Jr., Fayetteville, Tennessee, for the appellee, John B. Cleghorn, Jr.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

In the early morning on September 3, 2014, Ryan Wesley Sherrer ("Decedent") was driving eastbound on State Highway 275 ("Vanntown Road") in Lincoln County, Tennessee.  Decedent struck a bull that was wandering in the road, causing his vehicle to

careen off the road and flip upside down into a creek, where he subsequently drowned. Decedent is survived by his spouse, Taylor Sherrer, and their two minor children (together, "Plaintiffs").

On August 27, 2015, Plaintiffs filed a wrongful death action against John B. Cleghorn, Sr., John B. Cleghorn, Jr. ("Defendant"), and Lula Belle Cleghorn (together, "the Cleghorns"), alleging that they owned the bull struck by Decedent and that they were negligent, careless, and reckless in their control of the bull. Plaintiffs sought economic and noneconomic damages and loss of consortium against the Cleghorns. In their answer, filed on October 28, 2015, the Cleghorns denied ownership and control of the bull struck by Decedent, and they gave notice that John B. Cleghorn, Sr., had died in October of 1981. In December of 2016, Plaintiffs filed and the trial court approved a voluntary dismissal of John B. Cleghorn, Sr., and Lula Belle Cleghorn, leaving only Defendant.

After several depositions were taken by both parties, Defendant moved for summary judgment on March 24, 2017. In support of his motion, Defendant argued that, because Plaintiffs could not prove Defendant's ownership, possession, or control of the bull, there was insufficient evidence for Plaintiffs to establish their claim. In response, Plaintiffs argued that Defendant failed to carry his initial burden in shifting the burden to Plaintiffs and that, even if he had, material issues of disputed fact existed, rendering an award of summary judgment improper.

The trial court, however, agreed with Defendant and granted his motion for summary judgment on December 4, 2017, finding that Plaintiffs had not produced sufficient evidence to create an issue of material fact as to whether Defendant owned the bull. Plaintiffs timely appealed.

### ISSUE PRESENTED

Plaintiffs raise only one issue on appeal, which we restate as follows: Whether the trial court erred in granting summary judgment to Defendant, despite the existence of genuine issues of material fact and the reasonable inferences drawn therefrom tending to establish that Defendant negligently failed to prevent the harm caused by the bull.

### STANDARD OF REVIEW

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (quoting Tenn. R. Civ. P. 56.04). "We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of

correctness." *Id.* "In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* "Summary judgments should not be used to find facts, to resolve factual disputes, or to choose among various permissible factual inferences. Thus, courts should not weigh the evidence in summary judgment proceedings, and likewise, they should not make credibility determinations." *Burgess v. Harley*, 934 S.W.2d 58, 66 (Tenn. Ct. App. 1996) (internal citations omitted). "The courts must deny a motion for summary judgment if any doubt exists with regard to the facts or the conclusions to be drawn from the facts." *Id.* (citing *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993)).

## DISCUSSION

In its order, the trial court stated that "there [was] no direct evidence that the bull involved in the accident belonged to [Defendant] or that on the day or night of the accident that any animal escaped from [Defendant's] property onto the road."[1] The trial court also stated that, as a matter of law, "there ha[d] not been enough evidence of contradictions or falsehoods on the part of [Defendant] to make his credibility a major issue in the case and thereby to negate his denial of ownership of the bull." Plaintiffs contend, however, that in making such determinations, the trial court "blanketly accepted" and "essentially took as true the defendant's denial of ownership of the bull— relying on and quoting exclusively from defense counsel's direct examination of the witnesses in its memorandum—while downplaying and even disregarding all conflicting evidence" favorable to Plaintiffs. After our review of the record on appeal, we agree.

In its order granting Defendant's motion for summary judgment, the trial court cited to the deposition testimony of Defendant and of Terri Ellen—Defendant's daughter—who each testified that the bull involved in the accident did not belong to Defendant. It also cited to Defendant's deposition testimony in which he stated that he knew the bull involved in the accident was not his because it "look[ed] like an Angus bull" and that "my cattle and bulls are what you call a Brangus bull." However, omitted from the trial court's order was any reference to Veterinarian Mark Short's affidavit in which he swore that the bull in the photographs of the accident did not appear to be an Angus bull—as Terri Ellen had also testified—but rather a Limousin bull. Although there was conflicting evidence as to what types of bulls Defendant owned, there was some evidence suggesting that he owned a Limousin bull. For example, although in one portion of his deposition testimony Defendant remarked that he owned "two Brangus bulls and two red and white bulls," elsewhere he testified that he owned two red and white Hereford bulls, one black Brangus bull, and one black Limousin bull. Moreover, in contrast to Terri Ellen's testimony that Defendant owns two Hereford bulls and two Brangus bulls, we observe that Defendant's son-in-law, Mike Ellen, testified that

---

[1] This issue was further complicated by the fact that the Defendant did not brand or tag its livestock to evidence ownership.

Defendant owns Brangus, Hereford, and Limousin bulls. The discrepancies between these portions of the witnesses' testimonies clearly indicate that there is a genuine issue of material fact as to the type of bull involved in the accident as well as the type of bulls owned by Defendant. Although the resolution of these inconsistencies may be favorable to either Plaintiffs or Defendant at trial, such a resolution was inappropriate at the summary judgment stage.

In addition to the evidence discussed above, the deposition testimony of Beau Tarryn Mitchell also created a genuine issue of material fact regarding the issue of ownership of the bull. The trial court, however, labeled Mr. Mitchell's testimony as "contradictory," pointing to alleged differences between his two affidavits and his deposition testimony. In one affidavit, dated May 8, 2017, offered in opposition to Defendant's motion for summary judgment, Mr. Mitchell swore "[t]he farm and pasture that the black bull went into is the [Defendant's] farm." In the second affidavit, dated May 14, 2017, offered in support of Defendant's motion for summary judgment, Mr. Mitchell swore he "did not see where [the bull] came from" and that he "did not see the bull go onto [Defendant's] property or through any portion of [Defendant's] fence." Regarding these statements, the trial court cited to this Court's summary of Tennessee law on contradictory statements by a single witness:

> Tennessee follows the rule that contradictory statements by the same witness regarding a single fact cancel each other out. The Tennessee Supreme Court has characterized mutually contradictory statements by the same witness as "no evidence" of the fact sought to be proved. However, in order to be disregarded under the so-called cancellation rule, the allegedly contradictory statements must be unexplained and neither statement can be corroborated by other competent evidence.

*Church v. Perales*, 39 S.W.3d 149, 169 (Tenn. Ct. App. 2000) (internal citations omitted) Applying the so-called cancellation rule, the trial court concluded that "the weight to be given to [Mr. Mitchell's] evidence is slight at best," that neither version of Mr. Mitchell's versions of the events were corroborated or could be reconciled by any explanation, and that the "watered-down version of Mr. Mitchell's testimony" made such proof "virtually useless" in the determination of the ownership of the bull. The trial court, however, failed to consider certain, relevant portions of Mr. Mitchell's deposition testimony. For instance, although he admitted he could not prove that the bull went back through the fence and onto Defendant's property, Mr. Mitchell, on numerous occasions throughout his testimony, stated that the bull had nowhere else to go but through the fence onto Defendant's property:

> Q:    Based on the width of the thicket and the length of the bull, did the bull have to go through the fence the way that you're watching and observing?

A:    Yes.

[. . . .]

Q:    Based on your knowledge of this thicket, the fence that's on the other side of the thicket, this area of [Defendant's] property, and what you observed this night of September 2nd, is there any place this bull could have gone other than back onto [Defendant's] property from where you were standing and where the bull was?

A:    No . . . .

[. . . .]

Q: [I]f he wasn't in the yard with you, where did the bull have to be based on your knowledge of the area and that fencerow?

A:    Through the fence.

[. . . .]

Q:    Is there any place this bull could have gone other than in that field from what you observed?

A:    No.

Q:    Did it have to go in that field?

A:    Yes.  I was behind it.  It had nowhere else to go.

We believe these additional statements do explain and do clarify the allegedly contradictory statements previously given by Mr. Mitchell in his two affidavits.  Such an explanation, as noted by our *Perales* decision, bars application of the cancellation rule.  Although they do not prove whether he saw the bull enter through the fence and onto Defendant's property, such a determination is unnecessary, given that such evidence is purely circumstantial.  Accordingly, the trial court improperly excluded this evidence from its summary judgment consideration.

Plaintiffs also contend that they presented sufficient circumstantial evidence from which a reasonable person could conclude that the bull had escaped from Defendant's farm.  According to Plaintiffs, the trial court "minimized and glossed over" the facts that Defendant's fence bordered Vanntown Road and that it was "rampant with defects," including holes, broken wires, and fallen trees across the fence line.  The trial court admitted the record contained "sworn evidence" to support these facts, but it stated that there was "no direct evidence" that the bull involved in the accident belonged to Defendant or that such bull had escaped from Defendant's farm.  However, as discussed by this Court in *State v. Phillips*:

> Litigants may prove any material fact by direct or circumstantial evidence or a combination of both.  Accordingly, in civil cases, litigants may carry their burden of proof using either direct or circumstantial evidence.  In fact, litigants may prove their claim or defense entirely with circumstantial evidence because there are situations in which circumstantial evidence may be more convincing than direct evidence.

*State v. Phillips*, 138 S.W.3d 224, 230-31 (Tenn. Ct. App. 2003). The "sworn evidence in the record" alluded to in the trial court's order refers to portions of the deposition testimonies of Defendant, Mr. Ellen, and Mr. Mitchell, which are briefly summarized as follows: Defendant testified that his cattle had escaped in the past due to defects in his fence, such as holes, broken wires, and fallen trees, Mr. Ellen testified that he had offered to get somebody to come out and give Defendant an estimate on a new fence, but Defendant refused, and Mr. Mitchell testified that Defendant's fence had been in "bad shape" for the entire 14 years Mr. Mitchell had lived in the area and that, on the night before the accident, he saw a black bull outside and along Defendant's property line. Because it is immaterial whether the evidence offered by litigants is direct or circumstantial, we believe Plaintiffs presented a sufficient amount of evidence—as discussed above—from which reasonable minds could differ as to whether the bull belonged to Defendant and whether it escaped from his property.

## CONCLUSION

As stated by Plaintiffs in their appellate brief, there was sufficient evidence presented below favorable to Plaintiffs. Defendant may or may not have owned a black Limousin bull, which may or may not have been the same bull struck by Decedent in his vehicle; Decedent struck the bull on Vanntown Road, in close proximity to Defendant's farm; the fence bordering Defendant's farm and Vanntown Road was rampant with defects, and Defendant's cattle had escaped his farm in the past; and Mr. Mitchell witnessed a black bull on Vanntown Road the night before the accident and followed it back toward Defendant's property. Viewing this evidence in the light most favorable to the nonmoving party—Plaintiffs—and drawing all reasonable inferences therefrom in their favor, a genuine issue of material fact existed. As such, the trial court's order granting Defendant's motion for summary judgment was improper. For the foregoing reasons, the trial court's summary judgment order is reversed, and the case is remanded for further proceedings as may be necessary and are consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE